## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

GEORGE L. TYUS, IV,

Plaintiff,

Civil No. 11-1773 (PJS/AJB)

v.

OWB REO, LLC; ONEWEST BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; SHAPIRO & ZIELKE, LLP,

**REPORT AND RECOMMENDATION**

Defendants.

George L. Tyus, IV, 403 Totem Road, Saint Paul, MN 55119, pro se.

Hailey A. Harren and Thomas P. Melloy, **GRAY PLANT MOOTY MOOTY & BENNETT, PA**, 1010 West Saint Germain, Suite 500, Saint Cloud, MN 56301, for defendants OWB REO, LLC, OneWest Bank, FSB, and Mortgage Electronic Registration Systems, Inc.; Lawrence P. Zielke, Amanda M. Govze, and Kristine M. Spiegelberg Nelson, **SHAPIRO & ZIELKE, LLP**, 12550 West Frontage Road, Suite 200, Burnsville, MN 55337, for defendant Shapiro & Zielke, LLP.

This matter is before the Court on a motion for to dismiss by defendant Shapiro and Zielke, LLP ("S&Z") (Docket No. 21), and a motion for judgment on the pleadings by the remaining defendants, OWB REO, LLC, OneWest Bank, FSB, Mortgage Electronic Registration Systems, Inc. (collectively, "OWB"). (Docket No. 15.) George L. Tyus, IV, brought the instant action against all defendants, claiming violations of numerous state and federal laws in connection with the foreclosure, sheriff's sale, and eviction proceedings of a property Tyus owned at 403 Totem Road in St. Paul, Minnesota. The matter was referred to this Court, Arthur J. Boylan, for a Report and Recommendation. *See* 28 U.S.C. 636(b)(1)(A). Because Tyus has failed to state a claim

upon which relief can be granted, in particular that OWB lacked standing to foreclose due to an invalid assignment of the mortgage and other alleged deficiencies, this Court recommends dismissal with prejudice.

## BACKGROUND

Tyus owned a property at 403 Totem Road.  (Compl. ¶ 3, Ex. 1, Docket No. 1.)  In 2006, Tyus executed the promissory note, secured by a mortgage, that became the subject of a foreclosure action.  (*Id.* ¶ 21.)  The relevant documents for the mortgage identified Mortgage Electronic Registration System, Inc. ("MERS") as the Mortgagee.  Tyus began making payments on the debt in 2006.  (*Id.* ¶¶ 35, 38.)  At that time, the loan number attached to the mortgage was 0441523602.  (*Id.* ¶ 38.)  At some point thereafter, the mortgage was assigned to OneWest Bank, FSB and recorded on August 11, 2010.  (Aff. of Thomas P. Melloy, July 15, 2011, Ex. 5C, Docket No. 4.)  On August 10, 2010, S&Z sent a notice of foreclosure and pending sheriff's sale to Tyus that explained that MERS was the mortgagee and OneWest Bank, FSB was the assignee.  (*Id.* Ex. 5D.)  The loan identification number was 3002057036.  (*Id.* ¶ 47.)  After the completion of the foreclosure sale, and the expiration of the redemption period, OWB commenced an unlawful detainer action against Tyus.  (Compl. ¶ 74, Docket No. 1.)  In response, Tyus brought suit in state court, and sought and received a stay of the eviction.  (Melloy Aff., Ex. 5F, Docket No. 4.)  Defendants removed to federal court, and then moved for dismissal.

## ANALYSIS

## I.      STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), courts must accept the nonmoving party's facts as true and construe the pleadings in the light most favorable to the nonmovant. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994). Ambiguities concerning the sufficiency of claims must be resolved in the nonmovant's favor as well. *Ossman v. Diana Corp.*, 825 F. Supp. 870, 880 (D. Minn. 1993). The same standard is applied to motions for judgment on the pleadings. *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to pass the plausibility requirement a claim must assert more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Although the Court holds pro se litigants to a lesser pleading standard, they must still allege sufficient facts to support their claim. *See Gerstner v. Sebig, LLC*, 386 Fed. App'x 573, 574-75 (8th Cir. 2010).

## II.   ASSIGNMENT OF THE MORTGAGE

Most of Tyus' claims center around the legality of the assignment of the mortgage from MERS to OWB. (*See* Compl. Counts II, III, VII, VIII, IX, X[1], XI, XII, XIII, Docket No. 1.) Tyus asserts that since he never approved an assignment, the foreclosure action was improper because OWB did not have standing to foreclose. The Minnesota foreclosure by advertisement statute states:

---

[1] The complaint fails to number paragraph 98 as Count X, however, the numbering of preceding and succeeding Counts indicate that it should be considered Count X.

To entitle any party to make such foreclosure, it is requisite:

(1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

(2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage, or any part thereof, or, if the action or proceeding has been instituted, that the same has been discontinued, or that an execution upon the judgment rendered therein has been returned unsatisfied, in whole or in part;

(3) **that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded**; provided, that, if the mortgage is upon registered land, it shall be sufficient if the mortgage and all assignments thereof have been duly registered; and

(4) before the notice of pendency as required under section 580.032 is recorded, the party has complied with section 580.021.

Minn. Stat. § 580.02 (emphasis added).   A foreclosing party must "strictly comply" with these requirements for a foreclosure to be valid.  *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494 (Minn. 2009).   The Minnesota Supreme Court has held that the MERS process of structuring mortgage transactions—whereby MERS is the mortgagee of record but unrecorded transfers of the promissory note assignments among MERS members occur—is not a violation of this statute.  *Id.* at 496 ("We conclude that the specific language of section[] 580.02 . . . does not require that a **promissory note assignment** be recorded before foreclosing a mortgage by advertisement." (emphasis added)).   The assignment at issue here is the same type of assignment as that in *Jackson*, a promissory note assignment with no change in the mortgagee of record.   Therefore, Tyus' knowledge of the assignment is not a requirement of the foreclosure statute and Tyus' complaint fails to state a claim that the foreclosure was invalid.   As a result, those

-4-

claims that are based on the allegation that the assignment was faulty fail as a matter of law.   (*See* Compl. Counts II, III, VII, VIII, IX, X, Docket No. 1.)   This Court recommends dismissal of these claims.

## III.   NOTICE OF THE ASSIGNMENT

Tyus claims that defendants' failure to give him notice of the change in ownership violated several laws including the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f, and the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601- 2617.  (*See* Compl. Counts V, VI, XI, XII, XIII,  Docket No. 1.)

### A. TILA

Congress passed TILA to protect consumers from uninformed use of credit.   15 U.S.C. § 1601(a).  TILA allows a consumer to rescind certain transactions for any reason within a certain time frame.  *See id.* § 1635(a).  It also requires the servicer (here, MERS) "[u]pon written request by the obligor" to provide the name, address, and telephone number of the owner of the debt "to the best knowledge of the servicer."  *Id.* § 1641(f)(2). However, the right of rescission expires three years after "the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ."  *Id.* § 1635(f).  In the instant action, Tyus seeks to invoke TILA more than three years after he signed the mortgage and after the sale of the property.  Hence, Tyus' complaint is beyond the statutory period and Count V fails as a matter of law.[2]  This Court, therefore, recommends dismissal of the TILA claim.

---

[2] Defendants also raise a question as to whether the documents Tyus filed with his complaint indicate that he did in fact have notice since he filed lien release documents against

### B.  RESPA

Tyus claims the failure to provide notice of the assignment is a violation of RESPA.  *See* 12 U.S.C. § 2605(b)(1)("Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.").  However, the remedy for such a failure is "actual damages to the borrower as a result of the failure . . . ."  *Id.* § 2605(f)(1).  Tyus' complaint fails to allege any damages caused by the supposed lack of notice.  In fact, the sum total of the allegation on this claim are:  "Plaintiff asserts that Defendants failure to provide Plaintiff with a written notification of change of Services violates RESPA 6 et seq."  (Compl. ¶ 92, Docket No. 1.)  Further, to the extent that the complaint lists damages, it fails to explain how the alleged violation of RESPA and its notice provisions caused those damages.  (*See* Compl. ¶¶ 120-133.)  "A claim under RESPA  . . . requires a showing that the violation proximately caused the plaintiff's damages."  *Frison v. WMC Mortg. Corp.*, No. 09cv1733,  2011 WL 4571753, at *4 (S.D. Cal. Sept. 30, 2011).  Even a liberal reading of the pleadings does not provide the Court with more than "labels and conclusions" which does not satisfy a plaintiff's obligation under *Twombly*.  550 U.S. at 555.  As a result, this Court recommends dismissal of Count VI.

## IV.  POWER OF ATTORNEY

Tyus argues that he never granted power of attorney to MERS, making the foreclosure invalid.  However, the mortgage includes a power of sale clause, whereby

---

OWB indicating knowledge of the transfer of ownership.  (*See* Aff. of Kristine M. Spiegelberg Nelson,  Sept. 12, 2011, Ex. F, Docket No. 18.)  This Court declines to address this argument since it recommends dismissal for failure to file a claim within the statute of limitations.

Tyus granted MERS and the successors and assigns of MERS the power of sale.  (Melloy Aff., Ex. 5A, Docket No. 4.)   Under Minnesota law, this power of sale is sufficient to confer upon MERS the right to foreclose on the property, provided the statutory requirements detailed above are also met.  *See, e.g.*, *Beecroft v. Deutsche Bank Nat. Trust Co.*, 798 N.W.2d 78, 83-84 (Minn. Ct. App. 2011) (discussing interaction of power attorney, power of sale, and foreclosure statutes).  Tyus mentions the power of attorney statute for a foreclosure, Minn. Stat. § 580.05, however, this statute does not require power of attorney from the title holder.  Rather it relates to the "attorney at law . . . employed to conduct such foreclosure" and the power of attorney executed by the mortgagee or assignee, here MERS or OWB, which does not provide Tyus with a remedy related to the foreclosure.  Therefore, this Court recommends dismissal of all claims based on the defective power of attorney.  (*See* Compl. Count II, XI, XII, XIII, Docket No. 1.)

## V.    NOTARY

Several of Tyus' claims involve the sufficiency of the notary attestation on the mortgage document.  (*See* Compl. Counts I, VIII, IX, X, XI, XII, XIII, Docket No. 1.) Tyus claims no notary was present at the closing, therefore the notary stamp is void, the mortgage a legal nullity, and the foreclosure invalid.  (*See* Compl. ¶ 23, Docket No. 1.)

However, a defect such as the one pled does not affect the enforceability of a mortgage between parties.

> In any case where an instrument affecting the title to real estate . . .was heretofore or is hereafter filed for record and recorded . . . and there is apparent on the face of the instrument or the record thereof a defect in the

attestation of the instrument . . . the instrument and the filing and record thereof . . . shall have the same force and effect as constructive notice and the same force and effect as evidence and **the same force and effect for all purposes that they would have had if no such defect or omission in attestation [existed]**.

Minn. Stat. § 507.251, subdiv. 1 (emphasis added).  Therefore, even assuming the notary attestation is false in some manner, the mortgage documents and their "force and effect" are unaltered.  As a result, this Court recommends dismissal of those claims that rely on the defective notary attestation.  (*See* Compl. Counts I, VIII, IX, X, Docket No. 1.)

## VI.    CHANGE IN LOAN NUMBERS

Tyus avers that the loan papers he signed were identified by one loan number and the foreclosure notice came with a different loan identification number.  Tyus asserts that this change is an indication of fraud and is a basis for several of his claims.  (*See* Compl. Counts IV, VII, XI, XII, XIII, XI, XII, XIII, Docket No. 1.)  In particular, Tyus asserts this loan number change is a violation of Minnesota Statute § 336.3-407, the Uniform Commercial Code ("UCC")[3] and a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692-1692p.

### A. ALTERATION UNDER THE U.C.C.

Under Minnesota law, an alteration to a loan document "that purports to modify in any respect the obligation of a party, or . . . an unauthorized addition of words or numbers or other change to an incomplete instrument **relating to the obligation of a party**"

---

[3] Tyus includes in Count IV a claim that this change in the loan identification number violates the "SEC".  It is unclear, however, from the motion papers what law this claim intends to invoke.  This Court, therefore addresses the issue in the context as discussed by the motion papers.

releases a party from the obligation.   Minn. Stat. § 3336.3-407 (emphasis added).

However, "[u]nless an alteration is both material and fraudulent, it does not discharge the

signer.  *Midway Nat. Bank of St. Paul v. Ray*, 359 N.W.2d 644, 646 (Minn. Ct. App.

1984) (citing *Hannah v. State Bank*, 261 N.W. 583, 583 (1935)).   Tyus thus infers that the

alteration was an act of fraud.

To state a claim for fraud, Tyus must allege that (1) the defendants made a false

representation about a past or present fact; (2) the fact is material and susceptible of

knowledge; (3) the defendants knew the representation was false or made the

representation without knowing whether it was false; (4) the defendants intended that

Tyus rely on the representation; (5) Tyus was induced to act based on the representation;

(6) Tyus suffered damages; (7) and the defendants' representation was the proximate

cause of Tyus' damages.  *See Igbanugo v. Cangemi*, No. A10-2002,  2011 WL 2519205,

at *3 (Minn. Ct. App. June 27, 2011) (citing *Vandeputte v. Soderholm*, 216 N.W.2d 144,

146 (Minn. 1974)).   Generally, a court holds a fact to be material if "it concerns a matter

to which a reasonable person would attach importance in determining his or her choice of

action with respect to the transaction involved . . ."  26 Williston on Contracts § 69:12

(4th ed.).   Tyus has failed to allege that the number affixed to the loan document was a

material part of his decision to enter into the mortgage.   Further, as explain above in

reference to his RESPA claim, while Tyus lists damages, he fails to allege how the

change in the loan identification number was the proximate cause of those damages.   As a

result, this Court recommends that the claim of a violation of the UCC be dismissed.

(*See* Compl. Count IV, Docket No. 1.)

**B. FDCPA**

Tyus claims that the alteration of the loan identification number, among other issues addressed in this recommendation, constitute a violation of the FDCPA.  The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors . . . and to protect consumers against debt collection abuses."  15 U.S.C. § 1692.  To the extent that this Court can discern Tyus' argument on this count, it is that the alteration of the loan identification number was a false or misleading statement in connection with the collection of a debt as defined in 15 U.S.C. § 1692e.  However, Tyus has not identified any case law, nor is this Court independently aware of any, that supports the proposition that the change in number alone constitutes an actionable misleading statement under the FDCPA.  To the extent that false name used by a creditor to collect a debt is a violation of the FDCPA, it is based in concepts of fraud.  *See Lester E. Cox Med. Ctr. v. Huntsman*, 408 F.3d 989, 992 (8th Cir. 2005) (identifying 15 U.S.C. § 1692e as the "anti-fraud provisions of the FDCPA").  As discussed above, the alteration of the identification number fails to sound in fraud.  As a result, this Court recommends dismissal of the FDCPA claim.  (*See* Compl. Count VII, Docket No. 1.)

In summation, this Court recommends dismissal of all claims, as all thirteen claims in the complaint are based on one or a combination of the assertions discussed above.  OWB simultaneously moved for this Court to vacate the state court's temporary restraining order on the unlawful detainer action.  (*See* Aff. of Thomas P. Melloy, Ex. F. July 15, 2011, Docket No. 4.)  The action removed to this Court was the lawsuit commenced by plaintiff, not the separate unlawful detainer action.  Dismissal of the

instant action may result in the automatic vacation of the stay of the unlawful detainer action, but that relief should be addressed in the state court as this Court does not have the power to interfere with state court proceedings and any other action necessary to vacate the stay must occur in state court.  *See Drexler v. Walters*, 290 F. Supp. 150, 152 (D. Minn. 1968) (citing *Hill v. Martin*, 296 U.S. 393, 403 (1935)).

## VII.   CLAIMS AGAINST LAW FIRM

Since all Tyus' claims fail to state a claim, this Court recommends dismissal against all defendants, including S&Z.  However, in addition, dismissal of S&Z is warranted since the pleadings state no factual allegations to support a claim against S&Z. The sum total of the factual allegations against S&Z are: "One [sic] or about July 1, 2010, Plaintiff begin [sic] receiving written communications from the Law Firm of Shapiro & Zilke, LLP., (hereafter "S&Z"), claiming to represent Defendants MERS and One West Bank as the Secured Creditor."  (*Id.* ¶ 46.)  Tyus mentions S&Z in the allegations of violations of the FDCPA and  foreclosure fraud.  (*Id.* Counts VII, IX.)  At most, however, the factual assertion can be construed as a failure to investigation the legitimacy of defendants' foreclosure action in the course of representation.  However, this failure is not actionable under state law, *see L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 379 (Minn. 1989), and Tyus has stated no facts that would sufficiently allege any

violation under the federal causes of action. *See Twombly*, 550 U.S. at 555.  As a result, the Court recommends dismissal of S&Z along with the other defendants.[4]

**IT IS HEREBY RECOMMENDED THAT:**

1.   Defendants Mortgage Electronic Systems, Inc., OWB REO, LLC, and OneWest Bank, FSB's Motion for Judgment on the Pleadings, Motion to Vacate Order [Docket No. 15] be **GRANTED** in part, **DENIED** in part. The Motion to Dismiss be granted, the Motion to Vacate the state order be denied;

2.   Defendant Shapiro & Zielke, LLP's Motion for to Dismiss/General [Docket No. 21] be **GRANTED**;

3.   The case be **DISMISSED** with prejudice;

4.   Judgment be entered accordingly.

Dated: <u>October 24, 2011</u>                      <u>s/ Arthur J. Boylan</u>
                                                      ARTHUR J. BOYLAN
                                                      United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before November 11, 2011.

---

[4] S&Z raises improper service as an additional reason it should be dismissed.  However, because dismissal for failure to state a claim is warranted, this Court declines to address this issue.